JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NICOLINE AMBE,individually, and THE ESTATE OF THE DECEDENT NDIFORCHU ALFRED TAMUNANG, by administrator NICOLINE AMBE; SUZY ANJIM NDIFORCHU; BLAFANWI NDIFORCHU; BOBBI AMANG NDIFORCHU; CHO MOFOR NDIFORCHU; SARAH NGWE GEH

Plaintiffs,

v.

AIR FRANCE, S.A., a French public limited company; and DOES 1-50.

Defendant.

Case No. 2:17-CV-08719 DDP-E

**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**

[Dkt. 94, 95]

Presently before the court are cross motions for summary judgment filed by Plaintiffs (Dkt. 94) and Defendant Air France, S.A. ("Air France") (Dkt. 95). Having considered the submissions of the parties, the court GRANTS Air France's motion, DENIES Plaintiffs' motion, and adopts the following Order.

**I. Background**

On December 7, 2015, Ndiforchu Alfred Tamunang ("Decedent") died on an Air France flight from Los Angeles to Paris. (Third

Amended Complaint ¶ 22.) At the start of the flight's descent into Paris, flight attendants discovered Decedent stretched out across three seats. (Declaration of Sarah Passeri, Ex. A at 4.) Decedent's eyes were rolled back, he was not breathing, and he had no pulse. (Id.) Five flight attendants, including a nurse, attempted to resuscitate Decedent through the use of an automatic external defibrillator, cardiac massage, a balloon ventilator, oxygen, and the injection of "pysiological serum," to no avail.[1] (Id.) Cockpit personnel immediately informed the control tower to request priority landing and the immediate assistance of French emergency medical technicians. (Passeri Decl., Ex. C at 11.) French medical personnel on the ground took over resuscitative efforts from flight attendants, but declared Decedent dead on the plane a few minutes later. (Passeri Decl. Ex. A at 4, C at 11.) The U.S. State Department's Report of Death of U.S. Citizen Abroad indicates that Decedent died of "Natural causes," as certified by a French doctor from the Charles de Gaulle Airport Medical Unit and registered with French authorities the day after Decedent's death. (Passeri Decl., Ex. M.)

Plaintiffs' Third Amended Complaint, however, alleges that an autopsy, conducted approximately 6 weeks later in Cameroon, determined that Decedent's cause of death was "accidental aspyhxiation." (TAC ¶ 29.) Plaintiffs' TAC alleges causes of action for strict liability and negligence against Air France, pursuant to the Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999, S. Treaty

---

[1] There appears to be no dispute that this term refers to saline.

Doc. No. 106-45 ("Montreal Convention"). Plaintiffs and Air France now each move for summary judgment.

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving

party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

Under Article 17 of the Montreal Convention, an air "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17. The dispositive question here is whether Decedent's death resulted from an "accident."

It is well established that, for purposes of the Montreal Convention, an injury arises from an accident "only if a passenger's injury is caused by an unexpected or unusual event

or happening that is external to the passenger."[2] Air France v. Saks, 470 U.S. 392, 405 (1985); Phifer v. Icelandair, 652 F.3d 1222, 1224 (9th Cir. 2011). "But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident . . . ." Saks, 470 U.S. at 406; Caman v. Cont'l Airlines, Inc., 455 F.3d 1087, 1089 (9th Cir. 2006). A Plaintiff bringing a Montreal Convention claim bears the burden of showing that an accident occurred. See Armstrong v. Hawaiian Airlines, Inc., 416 F. Supp. 3d 1030, 1043 (D. Haw. 2019).

A. Cause of Death

Here, French medical authorities determined that Decedent died of "[n]atural causes." Such an injury, if suffered in the usual course of aircraft operations, would not, of course, constitute an "accident." Plaintiffs attempt to carry their burden, or to at least create a genuine dispute of fact as to the cause of Decedent's death, by arguing that their own motion for summary judgment "proved" that Decedent died not of natural causes, but rather by "accidental asphyxia."[3] (Plaintiffs' Opposition to Air France MSJ at 5.) Needless to

---

[2] In Montreal Convention cases, courts regularly apply principles applicable to the Montreal Convention's predecessor, Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention")", October 12, 1929, 49 Stat. 3000, 137 L.N.T.S. See Narayanan v. British Airways, 747 F.3d at 1127 n.2.

[3] Although Plaintiffs' Opposition (Dkt. 101) to Air France's Motion for Summary Judgment is captioned correctly, each page of Plaintiffs' Opposition is labeled "Memorandum of Points and Authorities ISO Plaintiffs' MSJ."

say, Plaintiffs' Motion for Summary Judgment is not evidence. More importantly, however, Plaintiffs' theory as to "accidental asphyxia" is not supported by any admissible evidence.

1. Dr. Wanji

Plaintiffs' asphyxiation theory is based primarily upon the declaration of non-retained expert Dr. Wanji Rene ("Dr. Wanji"), produced for the first time in connection with Plaintiff's motion. Dr. Wanji's declaration is accompanied by a two-page autopsy report ostensibly conducted in Cameroon six weeks after Decedent's death. Dr. Wanji's opinion is inadmissible for several reasons. First, Dr. Wanji never produced a written report, as required under Federal Rule of Procedure 26(a)(2)(B) of all experts "retained or specially employed to provide expert testimony." Plaintiff's only explanation is that Dr. Wanji is a non-retained expert. Courts, however, do not necessarily exempt experts from Rule 26(a)(2)(B) simply on the basis of counsel's designation. See, e.g., Burreson v. BASF Corp., No. 2:13-CV-0066 TLN AC, 2014 WL 4195588, at *4 (E.D. Cal. Aug. 22, 2014); cf. Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011) ("[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment."). Indeed, Dr. Wanji's declaration states that he reviewed documents produced in the course of this litigation, which were presumably provided to him by Plaintiffs' counsel.

(Wanji Decl. ¶ 4.) The declaration is silent as to the nature of Dr. Wanji's relationship to or interactions with Plaintiffs or their counsel. (Wanji Decl. ¶ 4.)

Second, even assuming that Rule 26(a)(2)(B) does not apply to Dr. Wanji, Rule 26(a)(2)(C) does. Rule 26(a)(2)(C) requires an expert disclosure to state (1) "the subject matter on which the witness is expected to present evidence" and (2) "a summary of the facts and opinions to which the witness is expected to to testify." Fed. R. Civ. P. 26(a)(2)(C). Plaintiffs' disclosure, which stated only that Dr. Wanji "may provide expert testimony with regards to his autopsy report, medical facts and opinions concerning examination, diagnosis, results of the autopsy [sic] . . ." complied with only the first of these prescriptions, and can hardly be said to comprise a summary of Dr. Wanji's opinion that Decedent died of accidental asphyxiation resulting from the ingestion of a cork. Plaintiffs may not, therefore, rely upon the Wanji Declaration to support or oppose the instant motions for summary judgment. See Fed. R. Civ. P. 37(c)(1).

Even putting aside Rule 26 disclosure issues, Dr. Wanji's declaration does not meet the standards of admissibility imposed by Federal Rule of Evidence 702. Trial courts have a gatekeeping function regarding expert testimony. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 n.7 (1993). Where "scientific, technical, or other specialized knowledge will assist the trier of fact" to understand evidentiary or factual issues, an expert witness who is

qualified by "knowledge, skill, experience, training, or education" may "testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The proponent of the expert testimony has the burden of establishing that the relevant admissibility requirements are met by a "preponderance of the evidence." Daubert, 509 U.S. at 592 n.10 (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)). Courts employ a flexible inquiry tied to the facts of the particular case to make determinations regarding the reliability of expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). The focus should be "solely on principles and methodology, not on the conclusions they generate." Daubert, 509 U.S. at 595; see also Fed. R. Evid. 702 Adv. Comm. Note to 2000 Amdt. An expert's experience alone can provide a sufficient foundation for expert testimony, so long as the witness explains "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 Advisory Committee Note to 2000 Amdt.

Dr. Wanji's declaration falls short of Rule 702 standards in numerous respects. First, the only evidence of Dr. Wanji's qualifications is his own statement that he is "a medical doctor and pathologist with over 20 years of experience." (Wanji Decl. ¶ 1.) There is no indication that Dr. Wanji has any particular expertise in asphyxiation, or indeed that he has ever conducted an autopsy other than that of Decedent.

Nor do Plaintiffs respond in any way to Air France's contention that Dr. Wanhji is, in fact, a neonatologist. Second, although Dr. Wanji's declaration states that "multiple other instructions not followed are procedures which would have greatly enhanced to . . . over 80% [Decedent's] chance of surviving . . .," he provides no methodology to explain such a conclusion. The court notes further that Dr. Wanji's declaration that Decedent was "in good health and great shape" when he boarded the plane is inconsistent with Dr. Wanji's own autopsy report, which stated that Decent was "thin, frail," and had "poor dentition with evidence of remote missing teeth," with apparent history of a tracheal tube and a "G-tube." Given these questions about Dr. Wanji's qualifications, experience, and methodology, his declaration and report are not sufficiently reliable, and are not admissible under Rule 702.

2. Dr. Nsahlai

Plaintiffs also rely upon the declaration and report of Christiane Nsahlai ("Dr. Nsahlai.") Dr. Nsahlai submitted an expert report opining that Decedent died of "accidental asphyxia," that his death "was an unusual or unexpected event that was external to him," and that Air France did not follow its own medical protocols. Dr. Nsahlai's opinions, however, are also not admissible. As an initial matter, and notwithstanding Plaintiffs' counsel's attempt to prevent Dr. Nsahlai from answering questions concerning her relationship to counsel, with whom she shares a last name, it is now clear

that Dr. Nsahlai is Plaintiffs' counsel's sister. "Federal courts have the inherent power to disqualify expert witnesses to protect the integrity of the adversary process, protect privileges that otherwise may be breached, and promote public confidence in the legal system." Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004). Dr. Nsahlai's obvious conflict of interest would alone be sufficient to warrant her disqualification.

Furthermore, however, Dr. Nsahlai's opinions are not admissible under Rule 702. Although designated as an expert on Montreal Convention accidents, airline emergency procedures, and "medical facts" involving Decedent, Dr. Nsahlai testified that she has no experience in the aviation industry as anything other than a passenger, she has no training or expertise in on-board medical procedures, and her only knowledge of the Montreal Convention is "hearing about it." Nor is there any indication that any other experience qualifies her to render expert opinions in this matter, or that her opinions are grounded in any reliable methodology. Rather, her opinion appears to have been based largely on the inadmissible opinions of Dr. Wanji, and no other medical records, Indeed, Dr. Nsahlai acknowledged that she did not take the French certification of death by natural causes into account. Furthermore, like Dr. Wanji, she does not appear to have any expertise in asphyxiation or autopsies, but rather is a doctor of obstetrics and gynecology in Cameroon. In light of these facts, Plaintiffs have failed to demonstrate that her

opinions or testimony are admissible under Rule 702, and Plaintiffs may not rely on them here.

B. Air France's Actions

Apart from the "accidental asphyxiation" theory, Plaintiffs posit that Air France's various alleged failures with respect to the medical care provided to Decedent onboard the aircraft constitute an "accident." Actions by crew members can, in some cases, qualify as the type of "unexpected or unusual event" necessary to the occurrence of an "accident" under the Montreal Convention. In Prescod v. AMR, Inc., 383 F.3d 861, 868 (9th Cir. 2004), for example, a passenger notified the air carrier that she was traveling with a bag containing medication and a breathing-assistance device, which needed to remain with her at all times. Prescod, 383 F.3d at 864. Although the airline had promised that the bag could stay with the passenger, she was forced to relinquish the bag before boarding the second leg of her flight. Id. The carrier then lost the bag, and the passenger died of respiratory distress some days later. Id. at 865. The Ninth Circuit found that, although baggage delays are not unusual, "removing the bag from Neischer's possession was 'unusual or unexpected.' Airlines do not usually take steps that could endanger a passenger's life after having been warned of the person's special, reasonable needs and agreeing to accommodate them." Id. at 868.

Inaction, too, may constitute an unusual event sufficient to qualify as an "accident." In Olympic Airways v. Husain,

540 U.S. 644, 647 (2004), for example, an asthmatic passenger informed an air carrier that he could not sit near smoking passengers, and supported his claim with a letter from a physician. Husain, 540 U.S. at 647. The airline nevertheless seated the passenger near a smoking section and thrice refused to re-seat him. Id. Heavy cigarette smoke caused the passenger to have a severe asthma attack, and die. Id. at 648. The Supreme Court held that, although the smoke itself was not unusual, and the passenger's reaction was internal, the crew's failure to act qualified as an unusual event external to the passenger, sufficient to qualify as an "accident." Id. at 654-55.

Here, Plaintiffs point to several supposed instances of the crew's unusual, wrongful responses upon discovering Decedent unconscious, including "failure to follow in-flight medical procedures," failure to seek the assistance of a ground-based doctor, improper administration of saline, and failure to properly use the defibrillator. Plaintiffs point to no admissible evidence, however, to support these theories. As discussed above, the opinions of Drs. Wanhji and Nsahlai are not admissible. The only other evidence cited by Plaintiffs is the opinion of Helen Zienkievicz, a designated expert in "the applicable standard of care, negligence, with regards to Air Franc's handling of the medical emergency of [Decedent], accident under the Montreal Convention."[4]

---

[4] Plaintiffs' do not dispute that they did not take the deposition of any percipient witness.

(Passeri Decl., Ex C ¶ 1.) Zienkievicz's expert report also describes her as "an expert in the field of aviation industry standards." (Id., Ex. D.). Nevertheless, Zienkievicz testified that she is only "somewhat familiar with [the Montreal Convention]," and is "not a legal expert." (Passeri Decl., Ex. E at 37.) Furthermore, although Zienkievicz's report opines that Decedent died from "accidental asphyxia," and that various Air France crew members' actions or inactions contributed to Decedent's death, she testified that she was not rendering a "medical opinion," but rather an opinion on "cabin safety and CPR and Hemlich." (Passeri Decl., Ex. E at 68.) Zienkievicz appears, thus, to have conceded that she is not qualified to render any opinion as to whether an "accident" occurred for purposes of the Montreal Convention, or as to the cause of Decedent's death and the factors that contributed to it.

Zienkievicz's principles and methodology, or lack thereof, are also cause for concern. Daubert, 509 U.S. at 595. Zienkievicz's conclusions are admittedly founded upon the inadmissible Wanji opinions, discussed above. (Passeri Decl., Ex. E at 68.) Although Zienkievicz also testified that her opinions were partly based upon the flight attendants' reports, those reports are in French. Zienkievicz testified, however, that she does not read French, and used Google Translate to interpret some of the French-language documents.[5] (Id. at 21, 39.) Plaintiffs do not dispute Air France's

representations that Plaintiffs, despite Air France's request, never produced any translated documents upon which Zienkievicz relied, and Plaintiffs have not shown, or attempted to show, that any Google Translate translations were accurate.

Nor was Zienkievicz aware of critical details of this case, including documentation indicating that French authorities determined that Decedent died of natural causes. (Id. at 41-42.) Further, although Zienkievicz opined that a flight attendant "practiced maleficence" by injecting Decedent with saline, she provides no basis for her assumption that the treating flight attendant, a nurse, was not authorized or trained to administer saline. Zienkievicz also later testified that she could not say whether administering saline would cause any harm.[6] (Id., Ex. D at 6;) Ex. E at 90.) Under these facts, the preponderance of the evidence does not support the conclusion that the requirements of Rule 702 have been met. Zienkievicz's opinions are not admissible.

## IV. Conclusion

Plaintiffs bear the burden of proving the elements of their case. They have cited no admissible evidence to establish that an "accident," as defined under the Montreal Convention, led to Decedent's death. Plaintiffs have therefore failed to show that

---

[6] Somewhat ironically, Zienkievicz testified that an onboard nurse may not have been qualified to administer saline because "if somebody . . . works in a neonatal clinic or a neonatal ICU, that doesn't necessarily mean that they're going to know what to do with an adult in terms of medicines, medications, and treatment." (Passeri Decl., Ex. E at 79.) As discussed above, Dr. Wanji appears to practice neonatal medicine and Dr. Nsahlai is a doctor of obstetrics and gynecology.

there is a genuine issue for trial, let alone that summary judgment in their favor is warranted. Accordingly, for the reasons stated above, Defendant's Motion for Summary Judgement is GRANTED. Plaintiff's motion is DENIED.

IT IS SO ORDERED.

Dated: August 10, 2021

DEAN D. PREGERSON

United States District Judge